The ESTATE OF Elvin J. HUEY, by the Personal Representative of that Estate, Joan HUEY, Petitioner,

v.

J.C. TRUCKING, INC.; Colorado Compensation Insurance Authority; and the Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 91SC593.

Supreme Court of Colorado, En Banc.

Sept. 21, 1992.

Lawrence J. Simons, Pueblo, for petitioner.

Michael J. Steiner, Paul Tochtrop, Denver, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to consider whether the estate of a deceased worker, who filed a worker's compensation claim before his death, is entitled to receive worker's compensation benefits where the claimant died of unrelated causes before an award was entered on the worker's compensation claim. The administrative law judge (ALJ) in this case ordered that the benefits be paid to the worker's estate. The Industrial Claim Appeals Panel (Panel) reversed the ALJ's order and denied all benefits. On appeal to the court of appeals, the Panel's decision was affirmed. 824 P.2d 89. We reverse and remand with directions to return the case to the Panel for a review of the ALJ's determination that the claimant's injury occurred while he was performing services arising out of and in the course of his employment. We further hold that if the Panel so finds, it should make an award of benefits to the claimant's dependent.

I.

Elvin J. Huey, the claimant, was injured on December 1, 1988, when he fell from the cab of a truck belonging to his employer, J.C. Trucking, Inc., and broke his leg. The claimant incurred medical bills in the amount of $6,602.02 and was temporarily totally disabled for 39 weeks at a weekly rate of $300 per week. The claimant filed a claim for worker's compensation benefits,

but died on September 3, 1989 of brain cancer before the ALJ entered an order. After the claimant's death, his widow, Joan Huey, was named as personal representative for his estate. The ALJ concluded that the claimant's injury was incurred while he was performing services arising out of and in the course of his employment and entered an order on June 6, 1990 in favor of the claimant's estate directing J.C. Trucking, Inc. and the State Compensation Insurance Authority[1] to pay benefits in the amount of $6,602.02 for medical bills and $11,700 for temporary total disability. CCIA, on behalf of J.C. Trucking, Inc. and itself, appealed the order. The Panel reversed on the grounds that the ALJ had no jurisdiction to order benefits after the claimant's death. The court of appeals affirmed on the same grounds.

## II.

■■■ Joan Huey argues that the claimant's estate is entitled to compensation for the medical expenses and temporary total disability benefits[2] to which the claimant had a right as a result of his injury. As grounds for this argument, Huey contends that the benefits in this case are "accrued and unpaid" under section 8–50–105(2), 3B C.R.S. (1986) (now codified as § 8–41–503, 3B C.R.S. (1992 Supp.)) and that section 13–20–101, 6A C.R.S. (1987), which provides in relevant part that "[a]ll causes of action ... shall survive and may be brought ... notwithstanding the death of the person in favor of ... whom such action has accrued," applies here to allow recovery of the benefits despite the claimant's death. We accept Huey's first contention and decline to address the second.

Section 8–50–105(2) states in relevant part:

In case an employee or claimant entitled to compensation dies leaving dependents, any accrued and unpaid portion of the compensation or benefits up to the time of the death of such employee or claimant shall be paid to such dependents as may be ordered by the director and not to the legal representative as such of said decedent.

§ 8–50–105(2). We must determine whether, under this section, the benefits requested are "accrued and unpaid."

This court has determined the term "accrued and unpaid" to mean "due and payable." *Employers' Mutual Ins. Co. v. Industrial Comm'n*, 89 Colo. 475, 480, 3 P.2d 1079, 1081 (1931). *Employers' Mutual* involved a claimant who was awarded and was receiving temporary partial disability benefits when he died of causes unrelated to the injury incurred while he was performing services arising out of and in the course of his employment. We held that "[i]f, at the time of [the claimant's death], there was an unpaid balance of the temporary partial disability award made prior thereto, that had become due and payable to [the claimant] in his lifetime, such balance was 'accrued and unpaid.'" *Id.* at 482, 3 P.2d at 1082. However, we held that the claimant's dependents could not receive an award of permanent disability benefits made after the claimant's death.

In *Borquez v. John Burbank Trucking*, 164 Colo. 217, 433 P.2d 767 (1967), the widow of a claimant who died before an award was entered relied on section 81–11–13(c), 4 C.R.S. (1963), which provides in part that "[w]here the accident caused permanent partial disability, the death benefit shall consist of the proportion of the unpaid and unaccrued portion of the permanent partial disability benefit which the employee would have received if he had lived." This court analogized *Borquez* to *Employers' Mutual* and held that section 81–11–13(c) had no application where the employee dies before there has been any determination that he is even entitled to any permanent partial disability benefits.

---

1. The name has been changed to the "Colorado Compensation Insurance Authority" and will be referred to as the CCIA in this opinion.

2. Huey concedes that the claimant's estate is not entitled to permanent total disability benefits.

Again, in *In re Claim of Dick v. Industrial Comm'n*, 197 Colo. 71, 589 P.2d 950 (1979), this court concluded that permanent partial disability benefits which had not been awarded before the death of the claimant did not constitute "accrued and unpaid" benefits under section 8–50–105(2), and, therefore, could not be awarded to the claimant's dependents after his death. In addition, we held that the survival statute, which provides that all causes of action may be brought, notwithstanding the death of the person in favor of whom such action has accrued, is inapplicable to claims filed under the Workers' Compensation Act (Act). *See* § 13–20–101, 6 C.R.S. (1973). We reasoned that the Act provides "different but specific benefits" for dependents and negates the survival concept. *Id.* at 73, 589 P.2d at 951.

Here, the court of appeals held that, under *Dick*, because there was no award entered in this case prior to the claimant's death, the requested benefits are not "due and payable" and may not be awarded to the estate. In addition, the court of appeals concluded that the survival statute is not applicable to workers' compensation claims.

Three members of this court dissented in *Dick* on the basis that the majority's construction of section 8–50–105(2) was too narrow and defeated the purposes of the Workers' Compensation Act of compensating and protecting the claimants' dependents. *Dick*, 197 Colo. at 74, 589 P.2d at 951 (Carrigan, J., dissenting). The dissent said:

> The legislature has not stated, nor did it intend, that dependents are entitled only to the accrued and unpaid portion of compensation benefits *already awarded....* Moreover it amounts to holding that the dependents' recovery of compensation to

which the workman was entitled prior to his death is contingent upon circumstances beyond their control: the condition of the Industrial Commission's hearing docket and its promptness in resolving cases. This practice squares with neither reason nor justice.

*Id.* at 74–75, 589 P.2d at 952 (Carrigan, J., dissenting) (emphasis in original). We find the reasoning articulated by the dissent in *Dick* persuasive and now overrule, on the following grounds, *Dick*'s holding that "accrued and unpaid" requires that there be an award of benefits prior to the claimant's death.

We conclude that our holdings in *Dick* and the cases leading up to *Dick* were based on an incorrect construction of the term "accrued and unpaid."

Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. *Woodsmall v. Regional Transportation District*, 800 P.2d 63, 67 (Colo.1990); *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo. 1987). To determine legislative intent, we must look primarily to the language of the statute itself and then give effect to the statutory terms in accordance with their commonly accepted meaning[s]. *Woodsmall*, 800 P.2d at 67; *Kern*, 746 P.2d at 1344.

*Jones v. Cox*, 828 P.2d 218, 221 (Colo.1992); *see* § 2–4–101, 1B C.R.S. (1980) (words and phrases shall be read in context and construed according to the rules of grammar and common usage).

"The [Act] is remedial and beneficent in purpose, and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families." [3] *Colorado Counties, Inc. v. Davis*, 801 P.2d 10, 11 (Colo.App.1990), *aff'd*, 817

**3.** Section 8–40–102 now states:
It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of

any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.
§ 8–40–102, 3B C.R.S. (1992 Supp.). This section does not apply to this case because it arises

P.2d 521 (Colo.1991); *see also University of Denver v. Industrial Comm'n of Colo.,* 138 Colo. 505, 509, 335 P.2d 292, 294 (1959). Moreover, "[i]n enacting a statute, it is presumed that: a just and reasonable result is intended." § 2–4–201(1)(c), 1B C.R.S. (1980). The Act provides specifically for the dependents of a deceased claimant. *See* § 8–50–105.

Section 8–50–105(2) provides that "any *accrued* and *unpaid* portion of the compensation or benefits up to the time of the [claimant's] death … shall be paid to [the deceased claimant's] dependents." (Emphasis added). "Accrue" means "to come into existence as an enforceable claim: vest as a right." *Webster's Third New International Dictionary* 13 (1986). "Unpaid" means "not presented as payment." *Id.* at 2505. Section 8–52–102(1) provides:

> The right to the compensation provided for in [the Act] … shall obtain in all cases where the following conditions occur:
>
> (a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;
>
> (b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;
>
> (c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.

§ 8–52–102(1), 3B C.R.S. (1986) (now codified as § 8–41–301(1), 3B C.R.S. (1992 Supp.)). Therefore, the worker's right to compensation under the Act vests or comes into existence when the three conditions set forth in section 8–52–102(1) are fulfilled. There is no language in section 8–50–105(2) which indicates that there must be an award entered before the right to compensation under the Act comes into existence.

Stare decisis favors adhering to the *Dick* decision. This principle, however, is not immutable and when justice demands it, stare decisis must yield. *Stroud v. City of Aspen,* 188 Colo. 1, 5, 532 P.2d 720, 722 (1975) (although this court generally follows the doctrine of stare decisis, the court will deviate from that doctrine of judicial policy when warranted); *Wolf v. People,* 117 Colo. 279, 282–83, 187 P.2d 926, 927–28 (1947) ("The best reason, and the one perhaps most frequently invoked to justify a departure from the [stare decisis] rule, is that the case under consideration by the court demonstrates that adherence thereto will either promote injustice or defeat justice."). This is such an occasion. Here, the *Dick* analysis is based on an erroneous construction of the statute and its application causes great hardship to the dependents of a deceased worker together with a corresponding windfall to the employer. We see no reason to punish the worker's dependents for the vagaries of the workers' compensation adjudication process which controls when a given case is decided. As long as the claim is timely filed by the claimant, the fortuity of the claimant's death from unrelated causes before final adjudication of his claim should not prevent the award of medical expenses and temporary total disability.

We conclude that the claimant's benefits "accrued" in this case when he fell from the truck owned by his employer and broke his leg.[4] The record reveals that, at the time of injury, both J.C. Trucking, Inc. and

---

from an accident that occurred in 1988 prior to the section's enactment.

**4.** Several other jurisdictions have rejected the notion that there must be an award and have instead concluded that a deceased claimant's dependents are entitled to benefits that are "legally payable under the [Workers' Compensation] Act due to the occurrence of a compensable injury." *State Dept. of Motor Vehicles v.*

*Richardson,* 233 Md. 534, 197 A.2d 428, 431 (1964). *See also Reed v. Industrial Comm'n,* 104 Ariz. 412, 454 P.2d 157 (1969) (estate is entitled to benefits, despite lack of award prior to death, on the grounds that survival statute applies); *Cureton v. Joma Plumbing & Heating Co.,* 38 N.J. 326, 184 A.2d 644 (1962) (worker who sustains a work-related injury immediately becomes entitled to compensation, subject only to

the claimant were subject to the provisions of said articles and that J.C. Trucking, Inc. had complied with the provisions of the Act regarding insurance. The ALJ found that the injury occurred while the claimant was performing services arising out of and in the course of employment and that the injury was not intentionally self-inflicted. Therefore, the conditions of recovery under the Act were fulfilled on the date that the injury was incurred. Accordingly, we conclude that the requested benefits were "accrued and unpaid" as of the date of the claimant's death and that the ALJ's award of those benefits was proper under section 8–50–105(2). The benefits should be paid to Joan Huey, as the claimant's dependent.[5]

Huey also argues that section 13–20–101, the survival statute, applies to this claim to allow the estate to recover the benefits due to the claimant even though no award was issued prior to the claimant's death. In light of our holding that the claimant's dependent is entitled to the benefits, which were "accrued and unpaid" under section 8–50–105, we will not address Huey's argument that the survival statute applies to this case.

### III.

The CCIA argues that it also raised on appeal the issue of whether the ALJ properly concluded that the injury occurred while the claimant was performing services arising out of and in the course of his employment. The ALJ concluded that the injury resulting from the fall from the truck occurred while the claimant was performing services arising out of and in the course of his employment. Such a finding is a condition of recovery under the Act. *See* § 8–52–102(1). This issue was not addressed by either the Panel or the court of appeals, and we did not grant certiorari on this issue. The record reveals that the CCIA raised this issue on appeal. Therefore, the Panel must determine whether, in light of this issue, the award of benefits by the ALJ was proper.

### IV.

We remand this case to the court of appeals with directions to return it to the Panel so that it may consider whether the injury occurred while the claimant was performing services arising out of and in the course of his employment. If the Panel does find that the injury was incurred while the claimant performed services arising out of and in the course of his employment, the Panel must then award compensation to Joan Huey in a manner consistent with the views expressed in this opinion.

---

determination as to amount and duration); *Greenwood v. Luby*, 105 Conn. 398, 135 A. 578 (1926) (survival statute applies to give estate right to benefits, despite lack of award prior to death); *City of Milwaukee v. Roth*, 185 Wis. 307, 201 N.W. 251, 252 (1924) ("The award does not fix the right to, only determines, the amount of the compensation for the injury.").

5. Section 8–50–105, 3B C.R.S. (1986) provides that the "accrued and unpaid portion of the compensation or benefits up to the time of the death of such employee or claimant shall be paid to such dependents as may be ordered by the director and not to the legal representative as such of said decedent." Under section 8–50–101(1)(a), 3B C.R.S. (1986) (now codified as § 8–41–501(1)(a), 3B C.R.S. (1992 Supp.)), the widow or widower of the injured or deceased worker is presumed to be wholly dependent "unless it is shown that she or he was voluntarily separated and living apart from the spouse at the time of the injury or death or was not dependent in whole or in part on the deceased for support." There is no indication in the record that Joan Huey should not be presumed to be wholly dependent. After the claimant's death, Joan Huey requested that she be added as a claimant, both individually and as personal representative of the claimant's estate. Although she now argues that the benefits should be awarded to the estate, we hold that such benefits properly would be awarded to Joan Huey, as the claimant's dependent, under section 8–50–105(2).