2003 VT 11

## Harold Dodge v. Precision Construction Products, Inc.

[820 A.2d 207]

No. 01-525

Present: **Amestoy, C.J., Dooley, Morse,**[1] **Johnson and Skoglund, JJ.**

Opinion Filed February 14, 2003

*Karl C. Anderson* of *Anderson & Eaton, P.C.*, Rutland, for Plaintiffs-Appelleess.

*Eric A. Johnson* and *Nicole Reuschel-Vincent* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.*, Burlington, for Defendant-Appellant.

---

[1] Justice Morse was present when the case was submitted on the briefs but did not participate in this decision.

¶ 1. **Dooley, J.** The main issue raised by this appeal is whether an action brought under the Vermont Workers' Compensation Act, 21 V.S.A. §§ 601-711, that is awaiting a formal hearing, survives the death of the claimant who had no dependents and whose death was unrelated to work. Precision Construction Products, Inc. (Precision) appeals from a decision of the Commissioner of the Department of Labor and Industry (commissioner) granting a motion to substitute parties made by the co-administrators of the estate of claimant Harold Dodge, Jr. (administrators) and denying Precision's motion to dismiss. Precision argues that claimant's workers' compensation claim does not survive his death. We agree with the commissioner that the claim survives, and affirm the denial of the motion to dismiss.

¶ 2. Claimant was employed by Precision from April 4, 1995, until he was terminated for performance issues on or about September 19, 2000. In October 2000, he filed a workers' compensation claim for an alleged work-related injury that occurred on or before September 1, 2000. Hartford Insurance Company, Precision's workers' compensation insurer, denied the claim on the ground that claimant had not alleged any injuries prior to being terminated. Claimant appealed the denial, see 21 V.S.A. § 663, and requested interim benefits pursuant to 21 V.S.A. § 662(b). The request for interim benefits, and a later request for reconsideration, were denied.

¶ 3. On April 29, 2001, while the workers' compensation claim awaited hearing pursuant to § 663, claimant died from causes unrelated to his alleged work-related injury.[2] At the time of his death, claimant was not married and was without children or other dependents. The administrators of claimant's estate moved pursuant to V.R.C.P. 25(a)(1) to substitute as claimants in the workers' compensation proceeding before the commissioner. Precision opposed the motion and moved to dismiss the claim, arguing that it did not survive claimant's death. The commissioner denied Precision's motion to dismiss and granted the administrators' motion to substitute parties. Precision appeals these decisions.

---

[2] The administrators argued to the commissioner that the examination of claimant's cause of death was still pending since the final results of the autopsy had yet to be received. The commissioner, however, found that the administrators had offered no evidence to refute Precision's position that the cause of death was pneumonia. This Court will not overturn factual findings of the commissioner unless they have no evidentiary support in the record. *Grather v. Gables Inn, Ltd.*, 170 Vt. 377, 383, 751 A.2d 762, 767 (2000). In any event, since the finding governs only with respect to the motion to dismiss, and we are affirming the denial of that motion, the administrators are free to offer evidence of a different cause of death on remand.

¶ 4. The precise issue on appeal, as expressed by the commissioner in her certified question to this Court, is as follows: "Does the contested workers' compensation action survive the death of the claimant who had no dependants and whose death was unrelated to work?" Precision argues that claimant's claim is abated, and thus the administrators' claim for substitution fails, because neither the Vermont Workers' Compensation Act (the "Act"), nor the general survival statutes, provide for the survival of a claim when a claimant with no dependents dies of nonwork-related causes prior to the adjudication of his claim. We conclude that the Act does provide for the survival of the claim, in part, and that the remainder survives under the general survival statute, 14 V.S.A. § 1451, because it has vested.

¶ 5. The Vermont Rules of Civil Procedure apply to contested workers' compensation proceedings before the commissioner. See Vermont Workers Compensation Rule 7.100 (2001). Under V.R.C.P. 25(a)(1), "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." Thus, V.R.C.P. 25(a)(1) has two requirements: (1) the claim must survive the death of the party, and (2) the party sought to be substituted must be a proper party. *State v. Therrien*, 161 Vt. 26, 29, 633 A.2d 272, 274 (1993). The administrators, as claimant's personal representatives, are the proper parties. See 14 V.S.A. § 1401 (administrator may prosecute "in the right of the deceased" actions that survive). The only remaining question, therefore, is whether the particular workers' compensation claim in the present case survives the death of claimant.

¶ 6. It is important at the outset to break down the elements of a workers' compensation claim. If the claim goes to hearing and is successful, it typically contains two major parts: (1) retroactive compensation back to the statutory commencement date, see 21 V.S.A. §§ 642 (total disability compensation after three days of disability from the date of the accident), 646 (partial disability compensation beginning on the eighth day of disability), 664 (commissioner's award specifies commencement date and includes interest on past due amount); and (2) prospective compensation. Although the administrators have not appeared here, their claim below was exclusively for compensation from the commencement of the loss on September 19, 2000 to claimant's death on April 29, 2001. They argued that this retroactive compensation should go to claimant's estate.

¶ 7. Precision's first argument is based on the fact that the Vermont Workers' Compensation Act contains a specific survival statute applicable where the claimant dies from causes other than the workplace accident.

See 21 V.S.A. § 639. Precision argues that this specific survival statute does not apply because the claimant was not found by the commissioner to be entitled to compensation before he died, and, in any event, he left no dependents. Because the statute does not apply, Precision argues, the Legislature must have intended that the claimant's claim should not survive his death. Although Precision raises two grounds why the statute does not apply, the second — that the claimant had no dependents — goes only to the amount of benefits that the statute provides and does not, therefore, support the motion to dismiss. Thus, we need consider only its first ground — that the statute does not allow an unadjudicated claim to survive.

¶ 8. We start with the wording of the statute:

### § 639. –Death, payment to dependents

In cases of the death of a person from any cause other than the accident during the period of payments for disability or for the permanent injury, the remaining payments for disability then due or for the permanent injury shall be made to the person's dependents according to the provisions of sections 635 and 636 of this title, or if there are none, the remaining amount due, but not exceeding $5,500.00 for burial and funeral expenses and expenses for out-of-state transportation of the decedent to the place of burial not to exceed $1,000.00, shall be paid in a lump sum to the proper person.

Precision bases its argument against survivability on specific words in the statute — that the death of the worker must occur "during the period of payments" and the statute specifies how the "remaining amount due" is to be distributed. Precision argues that in the absence of a preexisting determination of entitlement for compensation there were no "payments" or "remaining amount due" on the day claimant died, and the statute does not apply. We find this an overly-narrow construction of the statute, particularly since we must construe it liberally in favor of coverage. See *Grather v. Gables Inn, Ltd.*, 170 Vt. 377, 383, 751 A.2d 762, 767 (2000). As we held in *Laird v. State Highway Dep't*, 112 Vt. 67, 80, 20 A.2d 555, 562 (1941), "[t]he employee's rights are based entirely on the injury and spring into being as soon as it is received." Precision's argument confuses the employee's right to payment with the adjudication of that right.

¶ 9. We are aided in our conclusion by decisions from other states. The majority of courts, in construing statutes like § 639, have concluded that the rights of dependents or the estate do not abate if the claimant dies before the workers' compensation claim is adjudicated. See generally 4 A.

Larson, Larson's Workers' Compensation Law § 89.05, at 89-5 (2002); see *Ala. Dry Dock v. Dir., Office of Workers' Comp.*, 804 F.2d 1558, 1561 (11th Cir. 1986); *Reed v. Indus. Comm'n*, 454 P.2d 157, 162 (Ariz. 1969); *Estate of Huey v. J.C. Trucking, Inc.*, 837 P.2d 1218, 1221-22 (Colo. 1992); *Estate of Peterson v. J.R. Simplot Co.*, 358 P.2d 587, 589 (Idaho 1961); *State Dep't of Motor Vehicles v. Richardson*, 197 A.2d 428, 431 (Md. 1964); *Cureton v. Joma Plumbing & Heating Co.*, 184 A.2d 644, 647-48 (N.J. 1962); *Powell v. Dep't of Labor & Indus.*, 485 P.2d 990, 995 (Wash. 1971).

¶ 10. Three decisions are particularly instructive. The first is *Cureton v. Joma Plumbing & Heating Co.*, a factually similar New Jersey Supreme Court case decided under a virtually identical New Jersey statute. The court addressed the argument that there must be a preexisting adjudication of eligibility for compensation prior to the claimant's death as follows:

> The fact that the workman had neither received the compensation payments to which he was entitled during his lifetime, nor even had an award entered in his favor, does not alter this result. The law regards done what ought to be done, and will not permit those who are obligated and should have paid the compensation to obtain advantage of the fortuitous circumstance of the workman's death. Any other result would permit the employer or his insurance carrier to gain an undeserved windfall. Moreover, as stated [in an earlier opinion]: "Such a rule would put a premium upon delay in discharging the statutory obligation . . . ."

184 A.2d at 649-50 (citations omitted) (quoting *King v. W. Elec. Co.*, 5 A.2d 490, 494 (N.J. 1939)); see also *Warrick v. Cheatham County Highway Dep't*, 60 S.W.3d 815, 819 (Tenn. 2001) (elaborating on policy reasons in support of rule that does not require a prior adjudication of eligibility).

¶ 11. The second is *State Department of Motor Vehicles v. Richardson*, decided under a statute similar to 21 V.S.A. § 639. The Maryland statute used the terms "right to any compensation payable" and "unpaid," and the employer made the same argument that it required a prior adjudication of eligibility. The Maryland Court of Appeals rejected this construction, first endorsing the reasoning of *Cureton* and noting that "[t]he wording of our statute does not support an inference that it was intended to make the survival of benefits depend upon the condition of the Commission's hearing docket, or its promptness in concluding cases." 197 A.2d at 431. It went on to deal specifically with the statutory language:

It is significant that our Legislature did not include a positive provision terminating the right to compensation if an award is not made before death. Nor did the Legislature say "the right to any compensation *awarded*", but said "payable". We believe that "payable" is not limited to mean payable because of an award, but instead means legally payable under the Act due to the occurrence of a compensable injury resulting in permanent partial disability. As soon as an employee sustains an injury arising out of and in the course of his employment for which our statute authorizes compensation, such is "payable" within the meaning of Sec. 36(4) (c). Any other construction would be harsh and unreasonable . . . .

*Id.*

¶ 12.   The third is *Estate of Huey v. J.C. Trucking, Inc.*, also decided under a similar statute providing that, upon the death of the employee, the "accrued and unpaid portion of the compensation" goes to dependents. The Colorado Supreme Court reasoned that accrued meant to come into existence as an enforceable claim or vest as a right, and the statute provided that the right to compensation came into existence when the statutory eligibility requirements were met. 837 P.2d at 1221. The court noted: "There is no language in [the statute] which indicates that there must be an award entered before the right to compensation under the Act comes into existence." *Id.*

■ ¶ 13.   We agree with the reasoning of *Cureton, Richardson,* and *Estate of Huey* and hold that, to the extent that the administrators may have a claim to compensation under § 639, such a claim survives the death of the claimant despite the fact that the claimant's claim for compensation had not been adjudicated by the commissioner prior to the claimant's death.

¶ 14.   Our resolution of the above question, however, does not fully resolve the matter before us. The administrators sought the compensation amounts the claimant would have received had he been found eligible prior to his death, and § 639 does not necessarily address that compensation. Thus we must decide whether § 639 provides for all of the compensation the administrators can receive if they prove the claimant was eligible, and, if not, whether a claim for other compensation, such as that sought by the administrators here, survives the death of the claimant. The commissioner has decided at least part of the underlying issues, and Precision has briefed them here.

¶ 15. We turn again to § 639. Because claimant left no dependents, § 639 caps "the remaining amount due" to the administrators at $5,500 plus $1,000 if claimant was buried out of state. If "the remaining amount due" includes the compensation that claimant would have received had he been found eligible prior to his death, the administrators can recover only so much of that compensation as falls within the $6,500 cap after burial expenses are paid. We reject that interpretation because it is inconsistent with how the statute treats dependents in cases where they exist.

¶ 16. In cases where the claimant was disabled or had a permanent injury, § 639 treats dependents as if the employee had died from a compensable injury. That effect is apparent from its requirement that compensation be paid according to "sections 635 and 636 of this title," the sections that set the periods of compensation for dependents of an employee who dies from a compensable injury. See 21 V.S.A. §§ 635, 636. Originally, if there was a gap between the injury and the employee's death, and the employee received compensation for the injury during that period, that compensation was deducted from the payments available to the dependents. See 21 V.S.A. § 638 (repealed). That offset provision was repealed by 1977, No. 182 (Adj. Sess.), § 22, and, as a result, the dependents' payments reflect only the future compensation that would have been paid to the employee if he or she had not died. In effect, they replace the employee's income that would have supported the dependents had the employee not died.

¶ 17. Applying the statutory meaning to cases where there are no dependents, we conclude that the effect is the same. That is, "the remaining amount due" refers to the future payments that claimant would have received had he not died, and not to the payments that would have been made to him during his life had he been found eligible earlier. Thus, the statutory payments to the administrators under § 639 are for future compensation that would have gone to the claimant if he had been found eligible and not died, and not for the accrued compensation between the date of his eligibility and the date of payment.

¶ 18. This is the construction of the virtually-identical New Jersey statute reached by the court in *Cureton v. Joma Plumbing & Heating Co.* In *Cureton*, the lower court held that the claimant's personal representative could obtain compensation, on proof that the claimant was eligible, but the total amount would be limited to the statutory cap applicable where the claimant died from nonwork-related causes, then $400 in New Jersey. After examining the history of the statute, the New Jersey Supreme Court disagreed, holding:

We believe the Appellate Division failed to appreciate that this amendment to the original Workmen's Compensation Act was not intended to affect the right of the workman himself, or his personal representative, to compensation payments which accrued and should have been paid to him while he was living. Rather, it was intended to create rights in the dependents to take effect upon the death of the workman, which they did not have under the original act.

The language of the amendment supports this conclusion. The reference to the workman's death "during the period of payments for permanent injury" implicitly presumes that the workman had been receiving all that was due him up to the time of his death. On this premise, it follows that "remaining payments" and "remaining amount due" were intended to refer to that part of the award accruing after the workman's death.

184 A.2d at 649. We find *Cureton* persuasive.

¶ 19. Having determined that § 639 does not give the administrators the compensation for the period between the date of claimant's injury, if any, and the date of his death, we must decide whether the administrators are otherwise entitled to that compensation if they prove the claimant's eligibility. Claimant would, of course, have been entitled to receive these retroactive benefits if he had remained alive and prevailed in showing eligibility. The administrators argued, and the commissioner agreed, that because of claimant's death, those payments should go to the estate.

¶ 20. Precision responds that the claim for this compensation abated with claimant's death because it is recognized neither by the specific survival statute, § 639, nor by the general survival statutes, 14 V.S.A. §§ 1451-1453. We do not agree.

¶ 21. Under 14 V.S.A. § 1451, the general survival statute, actions that "survive by common law" survive under the statute and "may be commenced and prosecuted by the executor or administrator." At common law, actions based on contract or property rights, for which injuries to the person were merely incidental, survived. See *Layne v. Int'l Bhd. of Elec. Workers*, 418 F. Supp. 964, 965-66 (D.S.C. 1976); *Creighton v. Pope County*, 54 N.E.2d 543, 547 (Ill. 1944). Based on this principal in the workers' compensation context, as Professor Larson states, "[a]ccrued but unpaid installments are, of course, an asset of the estate, like any other debt." 4 A. Larson, Larson's Workers' Compensation Law § 89.02 (2002) (citing cases).

¶ 22.   As with the other issues in this case, we find that this issue was resolved persuasively in *Cureton v. Joma Plumbing & Heating Co.* The New Jersey Supreme Court reasoned:

> The workman's right to the compensation benefits which he has "earned" come from his employment contract, whose terms include the provisions of the Workmen's Compensation Act. . . . When he has sustained a work-connected injury within the terms of that contract and the waiting period has passed, he immediately becomes entitled to compensation, subject only to determination as to amount and duration. . . .
>
> . . . In . . . case [of death], the right to the payments which would have accrued after the workman's death dies with him in the absence of a specific statute preserving such a right. . . . However, a claim for compensation payments which accrued but were not paid at the time of the workman's death is a vested right which he has earned, and therefore it becomes an asset of his estate.

184 A.2d at 647-48; see also *Parker v. Indus. Comm'n*, 50 P.2d 278, 279-80 (Utah 1935) (reviewing cases and holding that accrued payments are earned and vested and part of employee's estate).

¶ 23.   Our characterization of workers' compensation benefits in Vermont is consistent with the *Cureton* analysis. A worker's right to compensation benefits stems from his employment contract: once employment begins, the Act becomes a part of the contract. *Morrisseau v. Legac*, 123 Vt. 70, 76, 181 A.2d 53, 58 (1962); see also *Hartman v. Ouellette Plumbing & Heating Corp.*, 146 Vt. 443, 445, 507 A.2d 952, 953 (1985) ("any *proceeding* for worker's compensation benefits is an action in contract"). Under this contract, as construed to include the provisions of the Act, a worker is entitled to compensation if he is injured by an accident in the course of his employment. 21 V.S.A. § 618. The purpose of this compensation is to make the employee injured on the job whole by replacing lost earnings. *Hodgeman v. Jard Co.*, 157 Vt. 461, 464, 599 A.2d 1371, 1373 (1991).

¶ 24.   We also disagree with Precision's related argument that because the Act specifically makes workers' compensation claims unassignable, see 21 V.S.A. § 681, the claims cannot survive the death of claimant. The statute makes it clear that the nonassignability provision is primarily designed to protect the claims against creditors of the claimant. See 21 V.S.A. § 681 ("Claims for compensation under the provisions of this

chapter shall not be assignable. Compensation and claims therefor shall be exempt from all claims of creditors . . . ."); see also *Cureton*, 184 A.2d at 648 ("statutory prohibition against assignments was intended solely for the protection of beneficiaries"). Although we recognize that claims that are not assignable are generally not survivable, this is not always the case. Thus, where compensation claims are nonassignable to protect beneficiaries, assignability does not determine survivability. See *Heuchert v. State Indus. Acc. Comm'n*, 121 P.2d 453, 453 (Or. 1942); *Employers' Mut. Liab. Ins. Co. v. Empire Nat'l Bank & Trust Co.*, 256 N.W. 663, 665 (Minn. 1934) ("where a statute for some special purpose forbids assignment, survivability of the right is not thereby affected"); *Monson v. Battelle*, 170 P. 801, 802 (Kan. 1918) (same).

¶ 25. Finally, we address Precision's argument that any decision finding that the claim at issue survives should be applied only prospectively. Judicial decisions, in general, are applied retrospectively. *Marsicovetere v. Dep't of Motor Vehicles*, 172 Vt. 562, 565, 772 A.2d 540, 543 (2001) (mem.). "In civil cases, we will apply a ruling prospectively only if (1) we overrule past precedent or decide an issue of first impression whose resolution was not clearly foreshadowed, and (2) retroactive application would be inequitable." *Vt. Accident Ins. Co. v. Howland*, 160 Vt. 611, 612, 648 A.2d 819, 820 (1993) (mem.) (internal quotations omitted). Precision argues that allowing the claim to survive in this case would be inequitable because "the law has long been established that claims such as this do not survive." As our analysis discloses, there is no established law that claims like that before us do not survive. Indeed, to the extent that the law was established from the decisions in other jurisdictions, it was directly opposed to Precision's position. It is not inequitable to apply the law announced in this decision to Precision.

¶ 26. In summary, we hold that the commissioner properly denied the motion to dismiss. The administrators may proceed and attempt to prove that the claimant was eligible for workers' compensation payments based on the alleged injury on or before September 1, 2000. If the administrators establish eligibility, they are entitled to the payments claimant would have received from the date of eligibility until the date of his death, as well as payments under 21 V.S.A. § 639.

*Affirmed and remanded for proceedings consistent with this opinion.*